UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRAND ADVANCE, LLC,

                Plaintiff,

        -against-

BRAND ADVANCE UK, *et al.,*

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 8384 (EK) (PCG)

**CROSS-GOLDENBERG**, United States Magistrate Judge:

On November 13, 2024, plaintiff Brand Advance, LLC ("Brand Advance" or "plaintiff") commenced this action against defendants Brand Advance UK, a foreign entity; BA Diversity Media, Inc., a Delaware corporation; Brand Advance Ltd, a UK private limited company; Brand Advance Group, a foreign entity; and Chris Kenna (collectively "defendants"), seeking damages and injunctive relief based on defendants' alleged infringement and dilution of plaintiff's U.S. Trademark Registration Number 4,571,611 (the "Brand Advance Mark") and trade dress, in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125.  (ECF No. 1 ("Compl.")).  Currently pending before this Court is plaintiff's Motion for Default Judgment (ECF No. 52 ("Motion" or "Mot.")), which was referred to the undersigned for a Report and Recommendation.  (Electronic Order, dated April 29, 2025).

BACKGROUND

Plaintiff Brand Advance, LLC is an advertising and marketing firm based out of Orlando, Florida, whose sole member is a resident of the State of Florida.  (Compl. ¶¶ 2, 8, 9).  On November 27, 2013, plaintiff filed Trademark Application Serial Number 86130968 (the "Application") for the mark "Brand Advance," and claimed September 6, 2009 as the date of

1

first use in commerce.  (Id. ¶ 15, Ex. 1).  The Brand Advance Mark consists of the words "BRAND ADVANCE" with no claim to a particular font or design.  (Id. ¶ 16).  According to the Application, the Application was classified for "Advertising Agency Specializing in the Design and Execution of Word of Mouth, Viral, Buzz and Experiential Marketing Programs; Advertising and Marketing Services Provided by Means of Indirect Methods of Marketing Communications, Namely, Social Media, Search Engine Marketing, Inquiry Marketing, Internet Marketing, Mobile Marketing, Blogging and Other Forms of Passive, Sharable or Viral Communications Channels; Advertising and Marketing Services, Namely, Promoting the Goods and Services of Others, in Class 35 (U.S. CLS. 100, 101 and 102)."  (Id. ¶ 17).

The Application was published for opposition on May 6, 2014, and bears a registration date of July 22, 2014.  (Id. ¶ 18).  Plaintiff asserts that it is the lawful owner of all rights, title and interest in the Brand Advance Mark.  (Id. ¶ 19).

Plaintiff alleges that the defendants Brand Advance UK and Brand Advance Group are foreign entities or fictious names, and Brand Advance Ltd is a UK private company, each with offices located at Runway East Aldgate, 2 Whitechapel Rd., London, E1 1EW, and all using the email address: contact@brandadvance.co.uk.  (Id. ¶¶ 10, 12, 13).  Defendant BA Diversity Media, Inc. ("BADM") is a corporation incorporated under the laws of Delaware with a registered office located at 275 Park Avenue, Suite A, Brooklyn, N.Y. 11205.  (Id. ¶ 11). Defendant Kenna is an individual residing in New York.  (Id. ¶ 14).

Plaintiff alleges that defendants conduct business in the United States through e-commerce websites:  www.BRANDADVANCESSP.com, www.BADIVERSITYMEDIA.com, and other websites and social media using the Brand Advance Mark in connection with Class 35 services.  (Id. ¶ 22).  According to plaintiff, defendants do not have a license or any authorization

to use the Brand Advance Mark in commerce or in connection with international Class 35 services. (Id. ¶ 21). Plaintiff alleges that defendants have offered to sell, have sold, and continue to sell infringing services using the Brand Advance Mark to consumers within the United States, including New York, through their various websites and social media. (Id. ¶ 23).

On November 26, 2019, defendants filed two Trademark Applications in the U.K.: one bearing Serial Number UK00003447070, for the standard character mark "BRAND ADVANCE," and the other bearing Serial Number UK0000347073 for the combined design and standard character mark "BRAND ADVANCE." (Id. ¶ 24). The applied-for mark was classified similarly to that of plaintiff's International Class 35 mark. (Id. ¶ 25). Plaintiff claims that as early as 2020, defendants were appearing in articles, advertisements, and social media in the United States. (Id. ¶ 28).

Plaintiff became aware beginning in 2021 that defendant Brand Advance UK was operating in the United States and infringing on plaintiff's mark. (Id.) On March 10, 2021, plaintiff emailed accountact@brandadvance.co.uk and nyc@brandadvance.co.uk, informing defendants of the infringement and plaintiff's awareness of the same. In response, defendant Kenna denied trading in the United States. (Id. ¶ 28, Ex. 4). Despite having been advised of plaintiff's mark, defendants "intentionally expanded into the United States," with BA Diversity Media, Inc., registering as a Delaware corporation on November 9, 2021. (Id. ¶ 29, Ex. 5). Plaintiff alleges that during this time, defendants operated websites such as: "WeAreBrandAdvance.com" and using or advertising the Brand Advance Mark on various social media pages such as X, Facebook, Instagram and LinkedIn, among others. (Id. ¶ 30). An article published in "Media Leader" on April 20, 2022 described defendant Kenna as running the Brand Advance Group in the United States. (Id. ¶ 31, Ex. 6).

3

Plaintiff, through counsel, once again contacted defendants on July 25, 2024, demanding that defendants cease and desist from the use of plaintiff's Mark.  (Id. ¶ 32, Ex. 7).  Defendants did not comply.  (Id.)  According to plaintiff, searches for "Brand Advance" would reveal numerous infringing posts, sites, and pages, including media publications including interviews of defendants continuing to use the Mark.  (Id. ¶ 33).  Plaintiff also avers that consumers have contacted it, confusing plaintiff for defendants on plaintiff's Facebook page.  (Id. ¶ 34).  Many of these posts are "not complimentary," according to plaintiff, and lead to confusion and "reputational damage" to plaintiff.  (Id. ¶ 35).

Plaintiff alleges that defendants have knowingly and willfully used plaintiff's Brand Advance Mark in commerce and in connection with the same types of services, causing consumer confusion as to the source of the goods or services or as to the sponsorship of such goods or services, causing irreparable harm to plaintiff.  (Id. ¶¶ 26, 27).  Plaintiff brings a claim of trademark infringement, under 15 U.S.C. § 1114, based on defendants' use of the Brand Advance Mark in commerce in connection with the sale, offering for sale, or advertising of similar services, with such use likely to cause confusion, and to deceive consumers, causing plaintiff irreparable harm.  (Id. ¶¶ 37-45).  Plaintiff also brings a claim of trademark/trade dress dilution, under 15 U.S.C. § 1125, based on defendants' use of the Brand Advance Mark.  (Id. ¶¶ 47-55).

Following the filing of the Complaint, plaintiff filed an ex parte Motion for Temporary Restraining Order ("TRO") on November 27, 2024.  (ECF No. 18).  Before ruling on the Motion, the Honorable J. Paul Oetken, United States District Court for the Southern District of New York, questioned whether venue was proper in the Southern District of New York, and on December 4, 2024, transferred the case to this Court with plaintiff's consent.  (ECF Nos. 22, 23).

The case was thereafter assigned to the Honorable Eric Komitee, who issued an Order on December 10, 2024, denying plaintiff's Motion for a Temporary Restraining Order. (ECF No. 25). On December 19, 2024, the district court held a hearing and ordered plaintiff to submit a proposed order for preliminary injunction by January 3, 2025. (Minute Entry, dated 12/19/2024).

On December 2, 2024, while the TRO was pending, plaintiff served defendant BA Diversity Media, Inc. ("BADM") by serving its registered agent located in Wilmington, DE. (ECF No. 26). On December 11, 2024, plaintiff served defendant BADM a second time, along with defendants Brand Advance Group, Brand Advance Ltd., Brand Advance UK, and Christopher Kenna via email.[1] (ECF Nos. 28-32).

On January 10, 2025, the Court directed plaintiff to submit a revised proposed order that resolved the extraterritoriality application of the Lanham Act. (Minute Entry, dated 1/10/2025). Defendants failed to answer or respond to the Complaint and a default was entered by the Clerk of Court on January 16, 2025. (ECF No. 46). On January 31, 2025, the Court entered a preliminary injunction, finding that although defendants were served with the Complaint as well as plaintiff's motion, and contacted the Court and plaintiff's counsel,[2] defendants had not properly appeared in the matter. (ECF No. 48 at 1–2). The Court found that plaintiff was likely to succeed on the merits of its trademark infringement claim under federal law and common law against the U.S.-based defendant BADM and its principal, and without entry of injunction,

---

[1] On December 10, 2024, the district court authorized service "via the email addresses [plaintiff] ha[s] previously used successfully to communicate with [defendants]." (ECF No. 25 at 2).

[2] According to the Declaration of Marshall A. Adams, filed April 24, 2025 (ECF No. 54 ("Adams Decl.")), defendants acknowledged receipt by email to the plaintiff and contacted the Court on the day of the hearing, but never properly appeared even after the Court scheduled a status conference for January 10, 2025, a date suggested by defendants as one they could attend, but did not. (Adams Decl. ¶ 13).

plaintiff would suffer irreparable harm.  (Id. at 2).  Sensitive to the Supreme Court's holding in

Abitron Austria GmbH v. Hetronic International, Inc., 600 U.S. 412 (2023) that the Lanham

Act's provisions are not extraterritorial but apply when a foreign entity uses an infringing mark

in domestic commerce, the Court issued a preliminary injunction applicable only to BADM, its

officers, agents, servants, employees, and attorneys, including defendant Kenna, pending final

resolution of the action.  (Id. at 3–4).  Among other things, the Court's Order directed defendants

to "remove from public view" all materials bearing the Brand Advance name in the United

States, and to "file a written report of all activities taken in reliance on, or pursuant to, this Order

within thirty days from the date hereof."  (Id. 4–5; Adams Decl. ¶ 15).  Defendants did not

comply with the Court's Order, emailing a "Response" to plaintiff's counsel stating that "all

Brand Advance websites have been taken down as the company is no longer operational."

(Adams Decl. ¶ 17).  Plaintiff and plaintiff's counsel represent that while they attempted to

verify these representations, they found "many examples of infringements remaining."  (Id. ¶

35).

       After default was entered against defendants, plaintiff moved for default judgment on

April 24, 2025.  (ECF Nos. 46, 51-56).  The motion was referred to United States Magistrate

Judge Cheryl L. Pollak on April 29, 2025, and the case was reassigned to the undersigned on

January 15, 2026.

DISCUSSION

I.  Default Judgment

          A.  Legal Standard

       Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for the entry

of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).

6

First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the Court has conducted a hearing or made a referral to determine the question of damages. See Fed. R. Civ. P. 55(b)(2).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp., 10 F.3d at 95–96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Furthermore, "[Rule] 55(b) states that a judgment by default 'may' be entered under specified circumstances, not that it must." See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.

The Court has significant discretion to consider several factors in deciding whether to grant a default judgment, including:  (1) whether the claims were adequately pleaded in the Complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating:  "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"), cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendants on notice that the plaintiff may seek such damages), adopting report and recommendation, id. at *1–9; (2) "'whether the grounds for default are clearly established;'" and (3) "'the amount of money potentially involved.'"  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (quoting 10 Charles A. Wright, et al., Federal Practice and Procedure § 2685, at 423, 425–26 (2d ed. 1983)).  The more money involved, the less justification for entering the default judgment.  Id.

Additionally, "'the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant.'"  Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (quoting Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465, 2012 WL 1416924, at *2 (E.D.N.Y. Mar. 15, 2012)), adopting report and recommendation, id. at 389–404; see also Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (explaining that under Fed. R. Civ. P. 55(b)(2) "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action"); 10A

Charles A. Wright, et al., Federal Practice and Procedure § 2685 (4th ed. 2008) (Apr. 2023 update) (discussing the aforementioned factors).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, a defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, for the purposes of an inquest, the Court "accept[s] as true all of the factual allegations in the complaint, except those claims relating to damages," and the plaintiff is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp., 653 F.2d at 65. While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing;" instead, "the court may rely on detailed affidavits or documentary evidence." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, it is beyond dispute that the defendants are in default since they failed to answer or otherwise respond to plaintiff's complaint. Moreover, defendants have failed to respond to (1) the plaintiff's motion for injunctive relief; (2) the district court's Order dated August 26, 2025; (3)plaintiff's motion for default judgment; and (4) to this Court's August 21, 2025 scheduling Order inviting defendants to submit damages papers and/or to request an inquest hearing. See Hirsch, 1992 WL 316143, at *1–2 (holding that defendant's default was "crystal clear" when it failed to oppose the plaintiff's motion for an entry of default after "fail[ing] to submit an answer or otherwise respond to the complaint"). Defendants also failed to appear at the hearing scheduled before this Court for November 5, 2025. Perhaps more important, defendant BADM has failed to retain counsel. As a corporate entity, BADM may not

appear in federal court without counsel.  See United States ex rel. Reliable Constr. PM, Inc. v. Land Frog, Inc., No. 13 CV 7351, 2015 WL 740034, at *3 (E.D.N.Y. Feb. 20, 2015).

Given the amount of time that has passed since the case was filed, and the amount of damages involved, there is no reason to delay any further.  The defendants have been afforded more than adequate opportunity to obtain counsel and to respond to the plaintiff's claims; instead, they have chosen not to take any action.  Accordingly, the Court proceeds to consider plaintiff's motion for default judgment.

### B.  Entry of Default Judgment: Liability

Defendants have failed to appear in this action, and thus the Court accepts as true all actual allegations in the Complaint, except those related to damages.  The Court further affords plaintiff all reasonable inferences from the evidence offered.  Nevertheless, the Court must still determine whether plaintiff's statutory claims of trademark infringement and trademark dilution establish a right to relief under federal and New York law.

### 1.    Trademark Infringement and Unfair Competition

Plaintiff brings claims under the Lanham Act for infringement of a registered trademark, 15 U.S.C. § 1114(a), and trademark dilution, 15 U.S.C. § 1125(a).  (Compl. ¶¶ 36-45, 46-55).

To prevail on a claim for infringement of a registered trademark under Section 1114(a) of the Lanham Act, a plaintiff must establish that it has:  1) a valid mark entitled to protection; and 2) a likelihood of consumer confusion resulting from the defendant's use.  Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc., 696 F.3d 206, 216–17 (2d Cir. 2012); Van Praagh v. Gratton, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014).  In addition to the protection afforded registered trademarks under 15 U.S.C. § 1114(1)(a), the Lanham Act also protects

"unregistered, common law trademarks." Time, Inc. v. Peterson Publ'g Co., 173 F.3d 113, 117 (2d Cir. 1999) (citing 15 U.S.C. § 1125(a)).

a.        Valid Mark Entitled to Protection

Plaintiff claims that it filed an application to register the Brand Advance Mark on November 27, 2013. (Compl. ¶ 15). The Brand Advance Mark carries a registration date of July 22, 2014. (Id. ¶ 18; see also Brim Decl.[3] ¶ 4 (stating that on July 22, 2014, he registered the Brand Advance Mark with the United States Patent and Trademark Office ("USPTO"), and it became incontestable on September 22, 2019)).

The Lanham Act provides that "a registered mark in continuous use for a five-year period is presumptively valid." Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 534–35 (2d Cir. 2005) (citing 15 U.S.C. § 1065). The presumption of validity may be rebutted by a showing by a preponderance of the evidence that the mark is not eligible for protection. Christian Louboutin S.A., 696 F.3d at 216 n.10 (citing 15 U.S.C. § 1115(a)); Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999)).

Plaintiff alleges that it has continuously used the trademark name "Brand Advance" in connection with its provision of advertising and marketing goods and services since September 6, 2009, thus satisfying the presumptive validity test of five years continuous use since registration. (Compl. ¶ 2, Ex. 1; see also Brim Decl. ¶ 10 (stating that since 2009, Brand Advance has built brand equity, trust, and awareness through the provision of marketing, advertising, technology and consulting services). Accordingly, accepting plaintiff's allegations as true in light of defendants' default, the Court finds that plaintiff owns a registered trademark

---

[3] Citations to "Brim Decl." refer to the Declaration of David Brim filed in support of plaintiff's Motion for Entry of Default Judgment for Damages and Permanent Injunction, ECF No. 55.

that has been in continuous use for more than five years, such that the trademark is presumptively valid.  Given that defendants have failed to appear in this case, they have not rebutted the presumption of validity.

Therefore, the Court respectfully recommends that the name "Brand Advance" be deemed a valid mark entitled to protection.

### b.    Likelihood of Confusion

Once a mark is determined to be valid and entitled to protection, the Court must determine whether the defendants' use of a similar mark is likely to cause customer confusion. Christian Louboutin S.A., 696 F.3d at 217.  In making this determination, courts apply an eight-factor balancing test, weighing:  1) the strength of the trademark; 2) the similarity of the marks; 3) the proximity of the products and their competitiveness with one another; 4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; 5) evidence of actual consumer confusion; 6) evidence that the imitative mark was adopted in bad faith; 7) respective quality of the products; and 8) the sophistication of consumers in the relevant market.  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 115 (2d Cir. 2009) (citing Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005)).  No one factor is dispositive; rather, the Court must look at the totality of circumstances to determine whether consumers are likely to be confused.  Id.  The Court considers each factor in turn.

### i.   Strength of the Marks

The Second Circuit has explained that "[t]he strength of a trademark encompasses two different concepts."  Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 147 (2d Cir. 2003).  The first is inherent strength, also called "inherent distinctiveness," which looks to whether the mark

12

uniquely identifies a product's source.  Id.  The second is "acquired distinctiveness," which refers to the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition.  Id.

Accepting plaintiff's allegations as true, plaintiff's Brand Advance Mark has acquired distinctiveness.  Plaintiff claims that through years of providing services under the Brand Advance name, plaintiff has created "brand equity, trust and awareness" which has been "further strengthened by years of thought leadership, including speaking engagements . . . appearances on popular marketing and entrepreneurship blogs," and the authorship of an Amazon best-selling book, *Land More Customers Through Online Marketing."*  (Brim Decl. ¶ 11).  According to plaintiff, it has "built substantial goodwill and associated reputation with the Brand Advance Mark amongst consumers."  (Id. ¶ 11).  The Court thus finds that the "Brand Advance Mark" mark has acquired distinctiveness.

## ii.  Similarity of the Marks

In analyzing the degree of similarity between a protected mark and an allegedly infringing mark, courts must determine "the overall impression created by the marks and whether such similarity is more likely than not to cause consumer confusion."  Krevat v. Burgers to Go, Inc., No. 13 CV 6258, 2014 WL 4638844, at *9 (E.D.N.Y. Sept. 16, 2014) (quoting Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004)).  Thus, courts may consider factors such as the typeface, color, and appearance of written marks, but must not afford any one factor too great a weight.  Cf. Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 160–61 (E.D.N.Y. 2013) (finding that the use of the same words, along with similar fonts, was sufficient to establish similarity of marks).

Plaintiff owns the Brand Advance Mark, registered in the United States. Defendants have registered the exact same Brand Advance name in the United Kingdom, with essentially the same description, and used the Brand Advance name to provide essentially the same services. (Compl. ¶¶ 23, 24, 25, Ex. 2; Brim Decl. ¶ 16 (noting that "BADM's online presence and public facing statements on its websites, social media, advertising and press interviews makes clear that BADM's core functions are to perform the three separate and distinct services Brand Advance performs")).[4] Given that the name of plaintiff's registered mark is identical to the name used by defendants, and the ensuing confusion, the Court finds this factor weighs in favor of plaintiff.

### iii.  Proximity of Products/Sophistication of the Purchasers

The third and eighth factors are analogous to each other and consider whether the products compete against one another, considering the products themselves, the structure of the relevant market, the class and sophistication of the consumers of the products, the manner of advertisement of the products, and the channels through which the products are sold. Vox Amplification Ltd. v. Meussdorffer, No. 13 CV 4922, 2014 WL 558866, at *11–12 (E.D.N.Y. Feb. 11, 2014) (citing Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 480 (2d Cir. 1996)), report and recommendation adopted, 50 F. Supp. 3d 555 (E.D.N.Y. 2014)).

Plaintiff claims that defendants provide their services to many of the same customers and through the same channels of trade as plaintiff. (Compl. ¶ 6). Plaintiff further alleges that defendants use the Brand Advance name for identical services as plaintiff. (Compl. ¶ 1, 6; Brim Decl. ¶ 9, 16). Moreover, plaintiff claims that defendants' use of plaintiff's mark has caused confusion or misunderstanding on the part of plaintiff's customers as to the affiliation of

---

[4] These services include 1) word of mouth, viral, buzz and experiential marketing; 2) indirect market communications; and 3) promoting the goods and services of others. (See Comp. ¶¶ 17, 25; Brim Decl. ¶¶ 9, 16).

14

plaintiff's and defendants' services.  (Compl. ¶¶ 27, 34, 35; Brim Decl. ¶ 8 (representing that defendants' use of the Brand Advance Mark "has caused confusion and significantly harmed our brand equity and online presence," noting that people "have tagged our social media account confusing it with the Defendants'. . . . [with] [s]earch engine traffic that would normally go to [plaintiff's] website. . .diverted to infringing content from the Defendants")).  Given that plaintiff's allegations are uncontroverted, the Court finds that plaintiff and defendants sell similar products and services and that plaintiff's customers have been and are likely to be confused.

#### iv.    "Bridging the Gap"

The fourth factor, "bridging the gap," refers to the extent that two products compete with one another.  Vox Amplification Ltd., 2014 WL 558866, at *11–12 (citing Starbucks Corp., 588 F.3d at 115), report and recommendation adopted, 50 F. Supp. 3d 355 (E.D.N.Y. Sept. 29, 2014).  This factor is irrelevant when the products are in direct competition with each other.  See id.  Since plaintiff has alleged that defendants provide virtually identical services as plaintiff (Compl. ¶¶ 17, 25; Brim Decl. ¶¶ 9, 16), this factor is irrelevant to the Court's analysis.

#### v.    Evidence of Actual Confusion

Next, the Court considers whether consumers have actually been confused by the competing marks.  Rush Indus., Inc. v. Garnier LLC, 496 F. Supp. 2d 220, 227 (E.D.N.Y. 2007).  Such confusion can be proved through consumer surveys or anecdotes.  Denimafia Inc. v. New Balance Athletic Shoe, Inc., No. 12 CV 4112, 2014 WL 814532, at *19 (S.D.N.Y. Mar. 3, 2014).

Plaintiff claims that defendants' use of the Brand Advance name has caused confusion and has significantly harmed plaintiff's brand equity and online presence.  (Compl. ¶ 27; Brim Decl. ¶ 8).  According to plaintiff's CEO, David Brim, consumers have contacted him, confusing plaintiff for defendants.  (Brim Decl. ¶ 8).  He also claims that search engine traffic has been

diverted to infringing content from the defendants.  (Id. ¶¶ 8, 32, 33).  Moreover, plaintiff claims that consumers have made negative posts and reviews mentioning defendants, referencing plaintiff's trademark, and causing reputational harm.  (Brim Decl. ¶ 8; Compl. ¶¶ 34, 35).

Plaintiff has also submitted the Declaration of Ted Murphy, former Chief Executive Officer and Founder of IZEA Worldwide, Inc., a firm specializing in branding, influencer marketing, digital advertising and marketing strategy.  (ECF No. 54-6 ¶ 2).  As an industry expert, Mr. Murphy reviewed various materials in connection with this case, including "Defendants' use of the identical mark in the same industry in which there is substantial competitive overlap," concluding that it "would almost certainly confuse existing and prospective clients; result in brand dilution and loss of goodwill; and cause reputational harm and actual loss of clients, exacerbated by misalignment with Brand Advance's service focus and values."  (Id. ¶ 8).

Accepting these allegations as true, the Court finds that there is evidence of actual confusion such that this factor weighs in favor of finding that defendants have infringed on plaintiff's mark.

### vi.  Bad Faith

The sixth factor, "bad faith," "generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."  Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc'y, 156 F. Supp. 3d 363, 371 (E.D.N.Y. 2016) (quoting Star Indus., 412 F.3d at 388), amended in part, 2016 WL 3983492 (E.D.N.Y. July 25, 2016), aff'd, 697 Fed. App'x 63 (2d Cir. 2017).  A court considers "whether Defendant adopted its mark with the intention of capitalizing on Plaintiff's reputation and goodwill."  Freedom Calls Found. v. Bukstel, No. 05 CV 5460,

2006 WL 845509, at *10 (E.D.N.Y. Mar. 3, 2006) (citation omitted).  Bad faith "may be inferred from the junior user's actual or constructive knowledge of the senior user's mark."  Star Indus. v. Bacardi & Co., 412 F.3d at 389.

Plaintiff claims that defendants knowingly and willfully used the Brand Advance Mark in commerce and in connection with the same services as plaintiff, without plaintiff's authorization or consent.  (Compl. ¶ 26).  Indeed, when plaintiff first became aware of defendants' infringement, plaintiff sent an email on March 10, 2021, advising them of the infringement and plaintiff's awareness that defendants were operating in the United States.  (Id. ¶ 12).  On July 25, 2024, upon learning that defendants were continuing to infringe, plaintiff sent a formal cease and desist letter through counsel.  (Compl. ¶ 32; Brim Decl. ¶ 15).  The infringing conduct allegedly continued.  (Compl. ¶ 32; Brim Decl. ¶ 15).  According to Mr. Brim, defendant Kenna made clear on various LinkedIn posts, video interviews and podcast interviews that he had greater success in the United States – "we are extremely happy to have had fantastic success in winning new US based clients" – belying any claim that he was not infringing by operating in the United States, including in May 2024 when he was "well aware" that he was not to use the Brand Advance Mark.  (Brim Decl. ¶¶ 19, 22).  In a July 20, 2023 article in Media Leader, defendant Kenna was quoted as saying "'Brand Advance Group is on track to exceed $10m+ revenue in 2023 and double this in 2024."  (Id. ¶ 23).

Even after this litigation was commenced, defendants chose to default rather than answer the charges even though it was clear that they had been served and were aware of the case and the nature of the claims.  When the Court issued a preliminary injunction applicable to BADM and Kenna, the Court's Order directed defendants to "remove from public view" all materials bearing the Brand Advance name in the United States, and to file a report detailing the actions

taken within thirty days of the Order.  (ECF No. 48 at 4; Adams Decl. ¶ 15).  Defendants did not comply with the Court's Order, but did email a "Response" to plaintiff's counsel stating that "all Brand Advance websites have been taken down as the company is no longer operational." (Adams Decl. ¶ 17).

Considering all of the circumstances, including plaintiff's efforts to obtain voluntary compliance with the law, defendants' misrepresentations as to use and cessation of use, and the defendants' flagrant disregard of the Mark and the Court's orders, the Court finds defendants' conduct to be in bad faith.

### vii.    Respective Quality of the Products

Plaintiff alleges not only that customers are confused by defendants' use of plaintiff's mark, but plaintiff claims that "[m]any of the posts" relating to defendants "are not complimentary, leading to not just confusion but also reputational damage to the Plaintiff." (Compl. ¶ 35).  In his Declaration, Mr. Brim elaborates by stating that plaintiff's Brand Advance services have created "brand equity, trust, and awareness" and "built substantial goodwill and associated reputation" amongst consumers.  (Brim Decl. ¶¶ 10, 11).  By contrast, "negative posts, reviews and mentions" of defendants being connected to plaintiff's trademark have created reputational harm to plaintiff.  (Id. ¶ 8).  As an example, Mr. Brim explains that defendants may have caused potential clients "with a more conservative corporate vision to forego using Brand Advance after seeing [defendants'] respective paradigms and focus were radically different." (Id. ¶ 40).  Accordingly, the Court finds this factor favors the plaintiff.

In light of the foregoing, the Court respectfully recommends that defendants' use of plaintiff's mark be found to be likely to cause confusion.  Specifically, the Court finds that plaintiff's Brand Advance Mark is distinctive; that defendants use the mark in the same

18

appearance and format as those used by plaintiff; that the products sold by plaintiff and defendants are similar such that plaintiff's customers have actually been confused by defendants' use of plaintiff's marks; that defendants' use of the Mark potentially caused plaintiff reputational harm and loss of goodwill; and that defendants have acted in bad faith.  The Court therefore respectfully recommends that defendants be found liable for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(a), and dilution under the Lanham Act, 15 U.S.C. § 1125(a).

II. Damages

A.  Legal Standard for Damages in Default Judgment

"It is well-settled that the burden is on the plaintiff to establish entitlement to recovery in a default proceeding." La Barbera v. Federal Metal & Glass Corp., 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) (citation omitted).  When a default judgment is entered, a defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986). However, a plaintiff must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc., 973 F.2d at 158.  "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

B.  Analysis

1.  Monetary Damages Under the Lanham Act

Plaintiff seeks an award of $3,000,000 in statutory damages based on defendants' willful infringement of plaintiff's trademark.  (Mot. at 1, 24, 25).  The amount is calculated, according to plaintiff, as $1,000,000 per mark times the three types of services offered for sale.  (Id. at 24)

The Lanham Act permits a prevailing plaintiff in a trademark infringement action to choose to recover either its actual damages or statutory damages.  Lyons P'Ship L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 117 (E.D.N.Y. 2010) (citing 15 U.S.C. § 1117(c), (d)).  Statutory damages may be "particularly appropriate" in cases where a defendant defaults, given "[t]he lack of information regarding [the d]efendants' sales and profits." Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc., No. 10 CV 1077, 2011 WL 1113491, at *2 (E.D.N.Y. Feb. 17, 2011) (citing Century 21 Real Estate LLC v. Paramount Home Sales, Inc., No. 06 CV 2861, 2007 WL 2403397, at *4 (E.D.N.Y. Aug. 20, 2007)), report and recommendation adopted, 2011 WL 1099841 (E.D.N.Y. Mar. 24, 2011).

Where a plaintiff elects to recover statutory damages, a court may award damages in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).  A defendant's default alone is sufficient to establish willfulness.  See Deckers Outdoor Corp. v. Huang, No. 15 CV 4772, 2017 WL 1842556, at *7 (E.D.N.Y. Apr. 20,

2017) (citing Unilever Supply Chain, Inc., 2011 WL 1113491, at *2), report and recommendation adopted, 2017 WL 1854728 (E.D.N.Y. May 5, 2017).

The Lanham Act does not provide guidance for courts when determining an appropriate award of statutory damages.  See Deckers Outdoor Corp., 2017 WL 1842556, at *7 (quoting Louis Vuitton Malletier, S.A. v. LY USA, No. 06 CV 13463, 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008)) (explaining that "[t]he statute does not explicitly 'provide guidance for courts to use in determining an appropriate award, as it is only limited by what the court considers just'").  However, courts in this Circuit have relied on the factors to be considered for willful infringement of the Copyright Act, 17 U.S.C. § 504, in considering questions of damages under the Lanham Act.  See, e.g., Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 176 F. Supp. 3d 137, 165 (E.D.N.Y. 2016) (citing Tu v. TAD Sys. Tech., Inc., No. 08 CV 3822, 2009 WL 2905780, at *5 (E.D.N.Y. Sept. 10, 2009)); see also Deckers Outdoor Corp., 2017 WL 1842556, at *7.  Those factors are:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Innovation Ventures, LLC, 176 F. Supp. 3d at 165 (citing Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116–17 (2d Cir. 1986)).  However, "[c]ourts maintain 'wide discretion' in determining an award of statutory damages."  Id. (quoting Fitzgerald Publ'g Co., 807 F.2d at 1116)).

Plaintiff explains that, because defendants have defaulted, and have a "propensity to minimize their actions or outright deny that they have infringed," it cannot ascertain the extent of

21

defendants' profits from their infringement of plaintiff's marks. (Mot. at 21). However, plaintiff points to the defendants' statements in the Media Leader publication that they were "on track to exceed…$10m+ revenue" in 2023 and projected to double that revenue in 2024. (Id. at 22 (citing Brim Decl. ¶ 23, Ex. 14)). This is consistent with defendants' 2022 representation in another publication that the Brand Advance Group had revenue and new client billings rising from $5m to $16m. (Id.)

As discussed above, plaintiff has submitted the Declaration of Ted Murphy, former Chief Executive Officer and Founder of IZEA Worldwide, Inc., a firm specializing in branding, influencer marketing, digital advertising and marketing strategy. (ECF No. 54-6 ¶ 2). Having reviewed defendants' public claims of annual revenue between $10m and $28m, and based on his direct experience with these types of firms, he notes "[g]ross profit margins of approximately 50-60% in traditional marketing and digital services," "[n]et profit margins of approximately 10-15%;" and "gross margins of approximately 20-40% and net margins of 10-15%" in influencer marketing services, with boutique specialist receiving up to 20-25%. (Id. ¶¶ 9, 10). Plaintiff claims that its requested damages "bear[s] a reasonable relationship to probable actual damages." (Mot. at 22).

Plaintiff argues that the Brand Advance Mark – a "catchy" two-word phrase – portrays not just a given product but a mark used "for the promotion of an entire business," akin to "Apple" or "iPhone." (Id. (emphasis omitted)). Its value is shown by the fact that even though defendants were aware of their infringement as early as 2021, they continued to use the mark to promote their entire line of services. (Id.) Given that defendants' websites and social media were designed to reach "the entire universe of U.S. brands," and used the mark in reference to three types of services, plaintiff argues that the amount they are requesting is consistent with

22

other cases where courts have dealt with websites and multiple types of goods.  (Id. at 23 (citing AW Licensing, LLC v. Wang Bao, No. 15 CV 1373, 2016 WL 4137453, at *3 (S.D.N.Y. Aug. 2, 2016) (granting $1,000,000 in statutory damages for each of 45 defendants, for each of two types of goods, totaling $90,000,000 in statutory damages)).

Plaintiff also argues that "deterrence is extremely important."  Id. (citing AW Licensing, LLC, 2016 WL 4137453, at *8.  Indeed, "the goal of deterring similar conduct by other enterprises requires a substantial award."  Louis Vuitton Malletier, S.A. v. LY USA, No. 06 CV 13463, 2008 WL 5637161, at *2 (E.D.N.Y. Oct. 3, 2008).  Defendants' default, coupled with plaintiff's allegations that defendants continued to infringe upon plaintiff's mark despite being notified of plaintiff's claim of infringement, supports the conclusion that defendants' conduct was willful.  See Deckers Outdoor Corp., 2017 WL 1842556, at *7.  Given that defendants were unwilling to stop their infringing conduct after being informed twice, including once by a formal cease and desist letter, and misrepresented to plaintiff that they had complied with the preliminary injunction, a higher statutory damages award is appropriate.  See Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 170 (S.D.N.Y. Jan. 28, 1999) (finding a "high level of willfulness" merited a higher award).  Although the Court is unable to determine the exact extent of the profits defendants reaped as a result of their infringing conduct, defendants' own statements suggest that they have obtained significant revenue and profits from their infringing conduct, and the Court accepts as true that plaintiff has suffered and continues to suffer damage to its business, reputation and goodwill as a result of defendants' infringement.  Here, a significant award is warranted to meet the goals of the statute, compensate plaintiff for its losses, and deter defendants from further engaging in infringing conduct.

Accordingly, the Court respectfully recommends an award of $3,000,000 consistent with prior awards granted by courts in this Circuit, to "impress upon [defendants] that there are consequences for [their] misconduct," and to "serve as a specific deterrent to [defendants] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future." See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006).

### C. Injunctive Relief

Plaintiff seeks a permanent injunction preventing defendants from further infringing on plaintiff's mark. (Prop. Order[5] at 2–3).

A court "may . . . issue an injunction on a motion for default judgment provided that the moving party shows (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." Chanel, Inc. v. Xiao Feng Ye, No. 06 CV 3372, 2007 WL 2693850, at *5 (E.D.N.Y. Sept. 12, 2007) (quoting Main Events/Monitor Prods. v. Batista, No. 96 CV 5089, 1998 WL 760330, at *1 (E.D.N.Y Aug. 26, 1998)) (alteration in original).

Here, plaintiff's claims fall under the Lanham Act, 15 U.S.C. §§ 1051 et seq.—a statute which authorizes injunctive relief upon a finding of liability. The Lanham Act authorizes a court to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a) . . . of section 1125 of this title." 15 U.S.C. § 1116(a). Thus, the Court finds that the statute allows for injunctive relief.

---

[5] Citations to "Prop. Order" refer to plaintiff's proposed order granting preliminary injunction filed on January 20, 2025, ECF No. 47, in compliance with the district court's January 10, 2025 Order. (See Minute Entry, dated 1/10/2025).

To obtain a permanent injunction following a default judgment, the plaintiff must establish that: (1) without an injunction, the plaintiff will suffer irreparable harm; and (2) actual success on the merits. Radisson Hotels Int'l, Inc. v. Radisson Cars & Limo, Inc., No. 14 CV 5927, 2017 WL 1067799, at *3 (E.D.N.Y. Mar. 1, 2017) (citing Municipal Credit Union v. Queens Auto Mall, Inc., 126 F. Supp. 3d 290, 298–99 (E.D.N.Y. 2015)), report and recommendation adopted, 2017 WL 1067766 (E.D.N.Y. Mar. 21, 2017); Lyons P'Ship L.P., 702 F. Supp. 2d at 118. The plaintiff is also required to establish the threat of a continuing violation. Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc., 628 F. Supp. 2d 312, 328 (E.D.N.Y. 2009) (citing Motorola, Inc. v. Abeckaser, No. 07 CV 3963, 2009 WL 962809, at *7 (E.D.N.Y. Apr. 8, 2009)), aff'd, 409 Fed. App'x 389 (2d Cir. 2010).

Under the Lanham Act, a showing of a likelihood of confusion establishes irreparable harm. Freedom Calls Found., 2006 WL 845509, at *22 (citing Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988)). Where a defendant continues to engage in its illegal conduct during the pendency of a lawsuit challenging that conduct, there is a threat of continuing violation. U2 Home Entm't, Inc. v. Fu Shun Wang, 482 F. Supp. 2d 314, 319 (E.D.N.Y. 2007), report and recommendation adopted, slip op. (E.D.N.Y. Mar. 26, 2007). On the other hand, when there is no evidence that a defendant has engaged in ongoing infringement, there is no threat of continuing violation. Victoria Cruises, Inc. v. Changjiang Cruise Overseas Travel Co., 630 F. Supp. 2d 255, 265 (E.D.N.Y. 2008).

Here, plaintiff has established not only a likelihood of confusion but also actual consumer confusion. (See Compl. ¶¶ 27, 34, 35; Brim Decl. ¶¶ 8, 32, 33; see also supra at 4, 15–16). Thus, plaintiff has established that without an injunction, it will suffer irreparable harm. Additionally, as discussed supra, plaintiff has established success on the merits of his trademark

25

infringement and dilution claims under the Lanham Act. Finally, plaintiff has demonstrated that despite multiple warnings from plaintiff and the Court's preliminary injunction order, defendants have continued to infringe on plaintiff's trademark by trading on the name Brand Advance through advertising, marketing, promoting and offering competing services through defendants' websites and social media. (See Mot. at 12–13). This establishes a threat of continued infringement.

Accordingly, the Court respectfully recommends that plaintiff's proposed injunction be granted, and that defendants be permanently enjoined from using the Brand Advance Mark.

III. Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and $4,463.38 in costs incurred pursuing this case against defendants, pursuant to the Lanham Act, 15 U.S.C. § 1117. (Adams Decl. ¶ 32; Mot. at 25). In support of the request for costs, plaintiff has provided the Court with a list of expenses reflecting the disbursements for court costs, service fees, research, and miscellaneous other expenses incurred in connection with the case. (See Adams Decl. ¶ 32). Plaintiff requests an opportunity to supplement the record with fees incurred should the Court decide to award attorneys' fees in this case.

A. Costs

Plaintiffs are entitled to costs under the Lanham Act, which provides that a prevailing plaintiff in a claim for trademark infringement is entitled to "the costs of the action." T-Mobile USA, Inc. v. Wholesaler212, Inc., No. 12 CV 5598, 2014 WL 1350705, at *7 (E.D.N.Y. Mar. 31, 2014) (quoting 15 U.S.C. § 1117(a)). The types of costs eligible for recovery under Section 1117(a) are those listed in 28 U.S.C. § 1920. Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05 CV 10100, 2008 WL 2485407, at *7 (S.D.N.Y. June 18, 2008) (citing Arlington Cent.

Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 297–98 (2006)).  Those costs include:  (1) fees of the Court Clerk and marshals; (2) fees for transcripts necessary for use in the case; (3) fees incurred in printing and for witnesses; (4) fees for copies of materials necessarily used for the case; (5) docket fees; and (6) compensation for court-appointed experts and for interpreters.  28 U.S.C. § 1920.  A court may also award costs for private process servers' fees.  AW Indus., Inc. v. Sleep Well Mattress, Inc., No. 07 CV 3969, 2009 WL 485186, at *6 (E.D.N.Y. Feb. 26, 2009)  However, legal research fees are not compensable under Section 1920.  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 5178119, at *6 (E.D.N.Y. Sept. 3, 2015) (citing United States ex rel. Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996)); see also King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 171–72 (E.D.N.Y. 2004); New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 312 (E.D.N.Y. 1998).

Plaintiff has submitted to the Court a summary of costs totaling $4,463.38.  (Adams Decl. ¶ 32).  Those costs include a $405.00 filing fee, a $21.00 court fee for a certificate of good standing, $4,029.38 in service costs, and $8.00 in social media research costs.  (Id.)  However, plaintiff has not submitted the invoices underlying those costs.  The Court cannot award costs without the underlying invoices.  See John v. DeMaio, No. 15 CV 6094, 2016 WL 7469862, at * 12 (E.D.N.Y. Sept. 29, 2016) (finding "the Court cannot simply take the ledger that plaintiffs' counsel created at face value without any additional evidence of the costs alleged therein").  Accordingly, the Court respectfully recommends that the district court deny plaintiff's request for fees without prejudice and with leave to renew.

B.  Attorneys' Fees

In "exceptional cases," prevailing parties may be awarded attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a).  T-Mobile USA, Inc., 2014 WL 1350705, at *6 (citing Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012)).  The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'"  Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc., No. 20 CV 2790, 2023 WL 2815623, at *5 (E.D.N.Y. Mar. 14, 2023) (quoting Octane Fitness, LLC v. ICON Health and Fitness, Inc., 572 U.S. 545, 548 (2014)).  Exceptional cases have been held to be "limited to those evidencing fraud, bad faith, or willful infringement."  General Nutrition Inv. Co. v. General Vitamin Ctrs., Inc., 817 F. Supp. 2d 66, 74 (E.D.N.Y. 2011) (citing Gordon and Breach Sci. Pubs. S.A. v. American Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999)).

Willful infringement may be established by the fact of a defendant's default.  Ortho Sleep Prods., LLC v. Dreamy Mattress Corp., No. 11 CV 6049, 2012 WL 6621288, at *11 (E.D.N.Y. Aug. 29, 2012), report and recommendation adopted, 2012 WL 6589208 (E.D.N.Y. Dec. 17, 2012) (citing cases); see also Designer Greetings, Inc. v. Shah, No. 14 CV 5936, 2017 WL 991085, at *3 (E.D.N.Y. Jan. 31, 2017), (explaining that, where a defendant is found to have willfully violated the Lanham Act based on the defendant's default, a plaintiff is entitled to attorneys' fees), report and recommendation adopted, 2017 WL 972101 (E.D.N.Y. Mar. 10, 2017).  An award of attorneys' fees "remains within the court's discretion."  Federal Express Corp. v. JetEx Mgmt. Servs., Inc., No. 13 CV 4431, 2014 WL 4628910, at *6 (E.D.N.Y. May 8, 2014) (citing T-Mobile USA, Inc., 2014 WL 1350705, at *6), report and recommendation

28

adopted, 2014 WL 4628983 *(E.D.N.Y. Sept. 15, 2014).  However, courts have awarded attorneys' fees "where defendants have failed to respond to the complaint and where plaintiff's evidence clearly demonstrates willful infringement." Ortho Sleep Prods., LLC, 2012 WL 6621288, at *11.

Plaintiff argues several facts weigh in favor of finding this is an "exceptional case" where fees are warranted—namely, the strength of the case, defendants' refusal to comply with cease and desist requests which forced plaintiff to file suit, defendants' default and defendants' lack of candor with the plaintiff and noncompliance with the Court's orders.  (Mot. at 25). The Court agrees.  Defendants' continued use of the Brand Advance name after being advised of the mark's registration on at least two occasions clearly was done knowingly and willfully.  Moreover, defendants' false representations to plaintiff in 2022 and again in response to the Court's Order, stating that there was no infringement and that they had ceased use of the mark, while boldly advertising on social media and elsewhere about their success and the revenues obtained through this violative conduct, magnifies the egregiousness of their willful behavior, making this an exceptional case. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Playboy Enters., Inc. v. Baccarat Clothing Co., 692 F.2d 1272, 1276 (9th Cir. 1982); E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277, 309 (S.D.N.Y. 2000), aff'd, 4 F. App'x 81 (2d Cir. 2001); Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 364 (S.D.N.Y. 1998).

As noted supra, courts have found exceptional circumstances to exist where a defendant simply defaults, evidencing willfulness. See, e.g., Designer Greetings, Inc.v . Shah, 2017 WL 991085, at *3.  Here, the facts and circumstances leading up to the lawsuit and requiring plaintiff to expend fees and costs to enforce its mark through litigation warrant an award of attorneys'

fees.  Accordingly, the Court respectfully recommends that plaintiff be permitted to renew their motion with support for the fees incurred.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that the district court grant plaintiff's motion for default judgment and award plaintiff $3,000,000 in statutory damages.  The Court further recommends that an injunction enter permanently prohibiting defendants from using the Brand Advance mark.  The Court also respectfully recommends that the district court deny plaintiff's requests for attorney's fees and costs without prejudice and with leave to renew.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        January 27, 2026

                                        /s/ Peggy Cross-Goldenberg
                                        Peggy Cross-Goldenberg
                                        United States Magistrate Judge
                                        Eastern District of New York